## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

**TRANSCEND SHIPPING SYSTEMS, LLC,**
*Plaintiff,*

v.

**MEDITERRANEAN SHIPPING COMPANY S.A.,**
*Defendant.*

**Case No. 6:21-cv-0040**

**JURY TRIAL DEMANDED**

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Transcend Shipping Systems, LLC ("Transcend") hereby files this Original Complaint for Patent Infringement against Mediterranean Shipping Company S.A. ("MSC"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.    Transcend is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2.    Upon information and belief, Mediterranean Shipping Company S.A. is a limited liability company organized and existing under the laws of Switzerland with its principal office at Chemin Rieu 12-14, 1208 Geneva Switzerland.

3.    Upon information and belief, Mediterranean Shipping Company (USA) Inc. is a corporation organized and existing under the laws of the State of New York with its principal office at 420 5th Avenue, 8th Floor, New York, New York 10018-2702.  Upon information and belief,

Mediterranean Shipping Company (USA) Inc. also maintains an office in Texas at 4700 W Sam Houston Parkway N., Suite 250, Houston, Texas 77041.

## **JURISDICTION AND VENUE**

4.   Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

5.   The Court has personal jurisdiction under the Texas Long Arm Statute and the Due Process Clause of the U.S. Constitution over MSC because they are present within or have minimum contacts within the State of Texas, including the Western District of Texas.

6.   MSC has sought protection and benefit from the laws of the State of Texas; MSC regularly conduct business within the State of Texas and within the Western District of Texas; and Plaintiff's cause of action arises directly from MSC's business contacts and other activities in the State of Texas and in the Western District of Texas.

More specifically, MSC, directly and/or through intermediaries, ship, distribute, use, offer for sale, sell, and/or advertise products and services in the United States, the State of Texas, and the Western District of Texas including but not limited to the Accused Instrumentalities as detailed below. Upon information and belief, MSC has committed patent infringement in the State of Texas and in the Western District of Texas. MSC solicits and has solicited customers in the State of Texas and in the Western District of Texas. MSC has paying customers, who are residents of the State of Texas and the Western District of Texas, who each use and have used the MSC's products and services in the State of Texas and in the Western District of Texas.

7.   As an example, Mediterranean Shipping Company (USA) Inc. ("MSC USA"), which is affiliated with MSC, is a corporation organized and existing under the laws of the State of New York with its principal office at 420 5th Avenue, 8th Floor, New York, New York

10018-2702.  MSC USA also maintains an office in Texas at 4700 W Sam Houston Parkway

N., Suite 250, Houston, Texas 77041. (*See* Figure 1A below).



Figure 1A[1]

8.      MSC indicates on its website that "[MSC USA] . . . with offices in . . . Houston, TX . . . is

General Agent in U.S.A. for [MSC]" and that "MSC USA is authorized to accept service of

legal proceedings issued against [MSC]." (*See* Figure 1B below).

---

[1] Source, as visited on January 15, 2021:  https://www.msc.com/usa/contact-us/msc-houston



Figure 1B[2]

9.    MSC also states in its website that "[a]ny and all cargo booked by MSC USA [including cargo booked by its office in Houston, TX] is for and on behalf of [MSC]." (*See* Figure 1 above).

10.    Upon information and belief, the registered agent for MSC USA in Texas is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

11.    Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b).

12.    Venue is also proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c)(3) because Defendant Mediterranean Shipping Company S.A. is not a resident of the United States and therefore may be sued in any judicial district.

---

[2] Source, as visited on January 15, 2021:  https://www.msc.com/usa/contract-of-carriage/agency-terms-conditions?lang=en-gb

## PATENTS-IN-SUIT

13.   Transcend Shipping Systems, LLC is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 7,253,731 ("the '731 Patent"); 7,482,920 ("the '920 Patent"); 9,847,029 ("the '029 Patent"); 10,181,109 ("the '109 Patent"); and 10,796,268 ("the '268 Patent") (hereinafter collectively referred to as "the Transcend Patents").

14.   The Transcend Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

15.   The Transcend Patents each include numerous claims defining distinct inventions.

16.   The priority date of each of the Transcend Patents is at least as early January 23, 2001. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

17.   Plaintiff alleges infringement on the part of MSC of each of the Transcend Patents.

18.   The '731 Patent relates generally to an apparatus, including a shipment conveyance device, associated with a shipment, which is a shipping a container, pallet, or tote, a memory device, located at the shipment conveyance device, in which information regarding the shipment is stored, a global positioning device, located at the shipment conveyance device, which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment and/or shipment conveyance device in response to an occurrence of an event or in response to a request for information and generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of the shipment, a shipment temperature, or an impact or force on the shipment conveyance

device, and a transmitter, located at the shipment conveyance device, which transmits the message to a communication device. *See* Abstract, '731 Patent.

19.    The '920 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, piece of luggage, or tote, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device located in, on, or at, the shipment conveyance device which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '920 Patent.

20.    The '029 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, or piece of luggage, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an

event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '029 Patent.

21.     The '109 Patent relates generally to an apparatus, including a shipment conveyance device, wherein the shipment conveyance device is a shipping container, pallet, or piece of luggage; a receiver; a global positioning device which is located in, on, or at, the shipment conveyance device and which determines a position or location of the shipment conveyance device; a processor which generates a message in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, wherein the request for information is automatically received by the receiver, wherein the message contains information regarding a position or location of the shipment conveyance device; and a transmitter which is located in, on, or at, the shipment conveyance device and which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '109 Patent.

22.     The '268 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, a pallet, or a piece of luggage; a global positioning device, located in, on, or at, the shipment conveyance device, which determines a position or location of the shipment conveyance device; a processor which generates a message in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device which request is automatically received by a receiver, and which message contains information regarding a shipment of the shipment conveyance device; and a

transmitter, located in, on, or at, the shipment conveyance device, which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '268 Patent.

23. The claims of the Transcend Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Transcend Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

24. The '731 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '731 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.13, 340/568.1 and 340/572.1.

25. After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 3,669,288, 06/1972, Young; (ii) US 5,317,323, 05/1994, Kennedy et al.; (iii) "Envirokare announces letter of intent with Electroship . . ." 2 page Envirokare press release dated Jul. 25, 2000"; (iv) US 5,825,283, 10/1998, Camhi; (v) US 6,044,990, 04/2000, Palmeri; (vi) US 6,464,142, 10/2002, Denenberg et al.; (vii) US 2002/0017996, 02/2002, Niemiec; (viii) FR 2816434, 05/2002, Touzet; (ix) US 5,877,707, 03/1999, Kowalick; (x) US 5,917,405, 06/1999, Joao; (xi) US 5,917,434, 06/1999, Murphy; (xii) US 6,046,678, 04/2000, Wilk; (xiii) US 6,148,291, 11/2000, Radican; (xiv) US 6,281,797, 08/2001, Forster et al.; (xv) US 6,292,828, 09/2001, Williams; (xvi) US 6,332,098, 12/2001, Ross et al.; (xviii) US 6,474,927, 11/2002, McAdams et al.; (xix) US 6,542,076, 04/2003, Joao; (xx) US 6,542,077, 04/2003, Joao; (xxi) US 6,549,130, 04/2003,

Joao; (xxii) US 6,587,046, 07/2003, Joao; (xxiii) US 6,610,954, 08/2003, Takizawa; (xxiv) US 6,844,473, 01/2005, Quinlin et al.; (xxv) US 2002/0016655, 02/2002, Joao; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvii) US 2002/0116318, 08/2002, Thomas et al.; (xxviii) US 2002/0121969, 09/2002, Joao; (xxix) US 2002/0198774, 12/2002, Weirich; (xxx) US 2003/0009361, 01/2003, Hancock et al.; (xxxi) US 2003/0016130, 01/2003, Joao; (xxxii) US 2003/0067541, 04/2003, Joao; (xxxiii) US 2003/0071899, 04/2003, Joao; (xxxiv) US 2003/0084125, 05/2003, Nagda et al.; (xxxv) US 2003/0193404, 10/2003, Joao; (xxxvi) US 2003/0206102, 11/2003, Joao; (xxxvii) US 2004/0160319, 08/2004, Joao; (xxxviii) US 2004/0230601, 11/2004, Joao; (xxxix) US 2005/0171835, 08/2005, Mook et al.; (xxxx) US 2005/0248444, 11/2005, Joao; (xxxxi) "Technology Executive . . . joins Envirokare as president and Director", 2 page Envirokare press release dated Sep. 5, 2000; and (xxxxii) "Envirokare Tech Inc. announces additions to advisory board", 3 page Envirokare press release dated Sep. 7, 2000.

26.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '731 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

27.     The '731 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology

and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

28.     The '920 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '920 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.11, 340/568.1 and 340/572.1.

29.     After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,825,283, 10/1998, Camhi; (ii)  US 6,046,678, 04/2000, Wilk; (iii) US 6,148,291, 11/2000, Radican; (iv) US 6,323,782, 11/2001, Stephens et al.; (v) US 6,429,810, 08/2002, De Roche; (vi) US 6,610,954, 08/2003, Takizawa; (vii) US 6,745,027, 06/2004, Twitchell, Jr.; and (viii) US 6,882,269, 04/2005, Moreno.

30.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '920 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

31.     The '920 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

32.   The '029 Patent was examined by Primary United States Patent Examiner Van T. Trieu.
During the examination of the '029 Patent, the United States Patent Examiner searched for
prior art in the following US Classifications: G08G 1/20, G01S 13/84, G06Q 10/08, G06Q
10/087, G08B 1/08, G08G 1/202, G08G 1/205, H04W 4/02, and H04W 4/021.

33.   After conducting searches for prior art during the examination of the '029 Patent, the United
States Patent Examiner identified and cited the following as the most relevant prior art
references found during the searches: (i) US 5,640,002, 06/1997, Ruppert et al.; (ii) US
5,825,283, 10/1998, Camhi; (iii)   US 5,959,568, 09/1999, Woolley; (iv) US 6,046,678,
04/2000, Wilk; (v) US 6,148,291, 11/2000, Radican; (vi) US 6,281,797, 08/2001, Forster et
al.; (vii) US 6,304,856, 10/2001, Soga; (viii) US 6,356,802, 03/2002, Takehara; (ix) US
6,411,891, 06/2002, Jones; (x) US 6,429,810, 08/2002, De Roche; (xi) US 6,610,954,
08/2003, Takizawa; (xii) US 6,745,027, 06/2004, Twitchell, Jr.; (xiii) US 6,748,318,
06/2004, Jones; (xix) US 6,859,722, 02/2005, Jones; (xx) US 6,882,269, 04/2005, Moreno;
(xxi) US 6,904,359, 06/2005, Jones; (xxii) US 7,035,856, 04/2006, Morimoto; (xxiii) US
7,085,775, 08/2006, Short et al.; (xxiv) US 7,212,829, 05/2007, Lau et al.; (xxv) US
2002/0046173, 04/2002, Kelly; (xxvi) US 2002/0061758, 05/2002, Zarlengo et al.; (xxvii)
US 2002/0120475, 08/2002, Morimoto; and (xxviii) US 2002/0132855, 07/2003, Swan.

34.   After giving full proper credit to the prior art and having conducted a thorough search for all
relevant art and having fully considered the most relevant art known at the time, the United
States Patent Examiner allowed all of the claims of the '029 Patent to issue.  In so doing, it is
presumed that Examiner Trieu used his or her knowledge of the art when examining the
claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is
further presumed that Examiner Trieu has experience in the field of the invention, and that

the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

35.     The '029 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

36.     The '109 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '109 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G06Q 10/08, G06Q 10/083, G06Q 10/087, H04W 4/02, and H04W 4/021.

37.     After conducting searches for prior art during the examination of the '109 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 7,035,856, 04/2006, Morimoto; (iii) US 7,212,829, 05/2007, Lau et al.; (iv) US 7,253,731, 08/2007, Joao; (v) US 9,847,029, 12/2017, Joao; and (vi) US 2002/0120475, 08/2002, Morimoto.

38.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '109 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

39.   The '109 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

40.   The '268 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '268 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G06Q 10/08 and G06Q 10/083.

41.   After conducting searches for prior art during the examination of the '268 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 6,148,291, 1/2000, Radican; (iii) US 6,492,904, 12/2002, Richards; (iv) US 7,035,856, 04/2006, Morimoto; (v) US 10,181,109, 01/2019, Joao; and (vi) US 2002/0111819, 08/2002, Li.

42.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '268 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

43.   The '268 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology

and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

44.    The claims of the Transcend Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

45.    The expiration dates of the Transcend Patents are at least the following: the '731 Patent expired on August 7, 2019 due to nonpayment of maintenance fees; the '920 Patent expires no earlier than April 27, 2022; the '029 Patent expires no earlier than November 1, 2023; the '109 Patent expires no earlier than January 22, 2022; and the '268 Patent expires no earlier than January 22, 2022.

## ACCUSED INSTRUMENTALITIES

46.    Upon information and belief, MSC sells, advertises, offers for sale, uses, or otherwise provides smart containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with Traxens devices  ("Accused Instrumentalities") that infringe the Transcend Patents.

## COUNT I

### (Infringement of U.S. Patent No. 10,181,109)

47.     Plaintiff incorporates the above paragraphs by reference.

48.     MSC has been on actual notice of the '109 Patent at least as early as the date it received
service of this Original Complaint.

49.     On information and belief, MSC owns and controls the operation of the Accused
Instrumentalities and generates substantial financial revenues therefrom.

50.     Upon information and belief, MSC has directly infringed and continues to directly infringe at
least claims 1, 8, 10, 13 and 14 of the '109 Patent by making, using, importing, selling,
and/or, offering for sale the Accused Instrumentalities.

51.     MSC, with knowledge of the '109 Patent, also infringes at least claims 1, 8, 10, 13 and 14 of
the '109 Patent by inducing others to infringe the '109 Patent.  In particular, MSC intends to
induce its customers to infringe the '109 Patent by encouraging its customers to use the
Accused Instrumentalities in a manner that results in infringement.

52.     MSC also induces others, including its customers, to infringe at least claims 1, 8, 10, 13 and
14 of the '109 Patent by providing technical support for the use of the Accused
Instrumentalities.

53.     Upon information and belief, MSC makes, uses, sells and offers for sale an apparatus,
comprising, a shipment conveyance device, wherein the shipment conveyance device is a
shipping container, a pallet, or a piece of luggage.  For example, MSC provides smart
containers ("shipment conveyance device") for shipping and/or delivering goods, products,
items, and/or other objects which are installed with Traxens devices.  See Figures 2-4 below,
which are screenshots of webpages associated with MSC.



Figure 2[3]



Figure 3[4]

[3] Source, as visited on January 15, 2020:  https://www.msc.com/smart-containers



Figure 4[5]

54.   Upon information and belief, MSC provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device. For example, MSC's Smart Containers are fitted with Traxens devices which comprise a global positioning device to determine a position/location of the shipping container. Further, MSC provides a mobile application "myMSC" available on iOS and Android which is used by customers to track and trace their cargo.  See Figures 5-10 below, which are screenshots of webpages associated with MSC.

---

[4] Source, as visited on January 13, 2021:  https://www.msc.com/getattachment/abc95690-b6c4-47b9-84f7-47c23a4ab918/6369118338905860651 , Page 3
[5] Source, as visited on January 15, 2020: https://www.traxens.com/

**HOW CAN SMART CONTAINERS ENHANCE YOUR SUPPLY CHAIN?**

**24/7 VISIBILITY & REAL-TIME NOTIFICATIONS FOR ALL YOUR CONTAINERS**

What if you could see the position of all your containers in transit anywhere on the globe at any time, whether on rail, road or sea?

What if you could inform the right people about unexpected events on your container's journey so that they can take timely action?

**WHAT IS A SMART CONTAINER?**

A Smart Container is a standard container permanently fitted with electronics which transmit data (position, temperature, movement, shocks, door opening…) and near real-time events (Geofencing in/out site, late in/out site, door status…).

You can also know more about the condition of your cargo by placing additional sensors for temperature, shocks, humidity and more, within your cargo. These sensors are like traditional data loggers but you can see the values in real-time as the cargo travels across the planet.

To understand what Smart Containers can do for you, take a look at the video on www.traxens.com, or go to http://vimeo.com/traxens/SmartContainers

No Device Installation or Reverse Logistics

Figure 5[6]



Figure 6[7]

[6] Source, as visited on January 13, 2021: https://www.msc.com/getattachment/abc95690-b6c4-47b9-84f7-47c23a4ab918/636911838905860651 , Page 3



Figure 7[8]



Figure 8[9]

---

[7] Source, as visited on January 13, 2021:  https://www.msc.com/getattachment/abc95690-b6c4-47b9-84f7-47c23a4ab918/63691183905860651 , Page 3
[8] Source, as visited on January 15, 2020: https://www.traxens.com/



Figure 9[10]

[9]  Source, as visited on January 15, 2020: https://www.traxens.com/en/services/data-that-suits-your-needs

[10]  Source, as visited on January 13, 2021: https://www.msc.com/gbr/news/2019-october/mymsc-app-now-available



Figure 10[11]

55.     Upon information and belief, MSC provides a processor, wherein the processor generates a
message in response to an occurrence of the event or in response to a request for information
regarding the shipment conveyance device, wherein the request for information is
automatically received by the receiver, wherein the message contains information regarding a
position or location of the shipment conveyance device. For example, MSC's Smart
Containers are fitted with the Traxens devices ("processing device") which measure
information related to shipping container including one or more of, but not limited to, door,
humidity, temperature and shock experienced by the shipping container and therefore, MSC
provides a processor which processes information regarding the shipment conveyance

---

[11]  Source, as visited on January 15, 2020:
https://play.google.com/store/apps/details?id=com.MSC.myMSCApp&hl=en_IN

device. As a further example, MSC's Smart Containers equipped with Traxens devices detect an event including one or more of, but not limited to, deviation in temperature, theft, unauthorised use, delay, deviation in planned route, cargo impact, shock and damage and in response to the detected event, send alerts ("message") containing information about the event to the customers of MSC. These alerts are viewed in a dashboard provided by MSC using Traxens-Hub. Therefore, MSC provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, MSC's Smart Containers, fitted with Traxens devices, measure information using sensors including one or more of, but not limited to, door sensor, humidity sensor, temperature sensor and shock sensor, and transmit information in the form of alerts to MSC's customers after a request for information is received by MSC automatically. Therefore, MSC provides a receiver which receives a request for information automatically. See Figure 6 above. See also Figures 11-15 below, which are screenshots of webpages associated with MSC.



Figure 11[12]

---

[12] Source, as visited on January 13, 2021: https://www.msc.com/getattachment/abc95690-b6c4-47b9-84f7-47c23a4ab918/636911833905860651 , Page 3



Figure 12[13]



Figure 13[14]

---

[13]  Source, as visited on January 13, 2021: https://www.msc.com/getattachment/abc95690-b6c4-47b9-84f7-47c23a4ab918/636911833905860651 , Page 4



Figure 14[15]



Figure 15[16]

---

[14] Source, as visited on January 13, 2021: https://www.msc.com/getattachment/abc95690-b6c4-47b9-84f7-47c23a4ab918/636911838905860651 , Page 4

[15] Source, as visited on January 15, 2020: https://www.traxens.com/

56.     Upon information and belief, MSC provides a transmitter, wherein the transmitter is located

in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits

the message to a communication device associated with an owner of the shipment

conveyance device, a receiver of the shipment conveyance device, or an individual

authorized to receive the message.   For example, MSC's Smart Containers ("shipment

conveyance device"), fitted with the Traxens devices, send information ("message")

including one or more of, but not limited to, location, shock, door status, temperature and

humidity, to MSC's customers. As a result, the customers monitor their shipments present in

the shipping containers using a dashboard/portal (provided through Traxens-Hub). Therefore,

MSC provides a transmitter for transmitting a message to a communication device associated

with an owner or an individual authorized to receive the message. See Figures 6 and 11

above. See also Figures 16-18 below, which are screenshots of webpages associated with

MSC.



Figure 16[17]

---

[16]  Source, as visited on January 15, 2020: https://www.traxens.com/


[17]  Source, as visited on January 15, 2020: https://www.traxens.com/



Figure 17[18]



Figure 18[19]

57.    Upon information and belief, MSC provides a sensor, wherein the sensor monitors or

measures a temperature during a shipment or a transportation of the shipment conveyance

device, a shock exerted on the shipment conveyance device, an impact exerted on the

shipment conveyance device, or a force exerted on the shipment conveyance device.   For

example, MSC's Smart Containers equipped with Traxens devices include at least one or

---

[18]  Source, as visited on January 15, 2020: https://www.traxens.com/technology
[19]  Source, as visited on January 15, 2020: https://www.traxens.com/technology

more of, but not limited to, a temperature sensor, shock sensor and tamper sensor for measuring at least one or more of, but not limited to, temperature, shock and tampering experienced by the shipping container during transportation. Therefore, MSC's Smart Containers fitted with Traxens devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device. See Figures 6, 11 and 18 above.

58.    Upon information and belief, MSC also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device. For example, MSC's Smart Containers, fitted with Traxens devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to MSC's customers. Therefore, MSC provides a message which contains information regarding temperature of shipment and a change in shipment temperature. Further, the Traxens devices, located on the Smart Container, measure information including, but not limited to, shock, motion, tamper and vibration experienced by the shipping container and transmit alerts ("message") when a theft or unauthorized use is detected. Therefore, the message contains information regarding an impact or force exerted on the shipment conveyance device. See Figures 13 and 14 above. See also Figure 19 below, which is a screenshot of a webpage associated with MSC.



Figure 19[20]

59.     Upon information and belief, MSC further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device.  For example, MSC's Smart Containers equipped with Traxens devices store geofencing parameters allowing MSC and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, MSC's Smart Containers equipped with Traxens devices detect events related to deviation from a pre-determined transportation route. See Figure 14 above. See also Figure 20 below, which is a screenshot of a webpage associated with MSC.

---

[20]  Source, as visited on January 15, 2020: https://www.traxens.com/en/services



Figure 20[21]

60.     Upon information and belief, MSC further provides an apparatus wherein the processor detects an occurrence giving rise to an insurance claim regarding the shipment conveyance device, and further wherein the message includes insurance claim information.  For example, MSC's Smart Containers equipped with Traxens devices, transmit alerts ("message") related to events including one or more of, but not limited to, theft, delay, deviation in planned route, cargo impact, shock and damage. Based on these alerts, MSC's customers file for an appropriate insurance claim to cover their losses. Upon information and belief, MSC's Smart Containers equipped with Traxens devices detect occurrences giving rise to an insurance claim regarding the shipment and transmits messages including insurance claim information. See Figures 14 and 19 above.

---

[21]   Source, as visited on January 15, 2020: https://www.traxens.com/en/services/data-that-suits-your-needs

61.     To the extent MSC continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '109 Patent, such infringement is necessarily willful and deliberate.

62.     On information and belief, MSC has a policy or practice of not reviewing the patents of others.  Further on information and belief, MSC instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, MSC has been willfully blind to the patent rights of Plaintiff.

63.     Each of MSC's aforesaid activities has been without authority and/or license from Plaintiff.

## **COUNT II**

### **(Infringement of U.S. Patent No. 9,847,029)**

64.     Plaintiff incorporates the above paragraphs by reference.

65.     MSC has been on actual notice of the '029 Patent at least as early as the date it received service of this Original Complaint.

66.     On information and belief, MSC owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

67.     Upon information and belief, MSC has directly infringed and continues to directly infringe at least Claims 2, 12, 15, 18 and 19 of the '029 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

68.     MSC, with knowledge of the '029 Patent, also infringes at least Claims 2, 12, 15, 18 and 19 of the '029 Patent by inducing others to infringe the '029 Patent.  In particular, MSC intends to induce its customers to infringe the '029 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

69.     MSC also induces others, including its customers, to infringe at least Claims 2, 12, 15, 18 and 19 of the '029 Patent by providing technical support for the use of the Accused Instrumentalities.

70.     As described above (*see* ¶ 50), and upon information and belief, MSC makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a smart container, a pallet, or a piece of luggage.   For example, MSC provides smart containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with Traxens devices.

71.     As described above (*see* ¶ 51), and upon information and belief, MSC provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, MSC's Smart Containers are fitted with the Traxens devices which comprise a global positioning device to determine a position/location of the shipping container. Further, MSC provides a mobile application "myMSC" available on iOS and Android which is used by customers to track and trace their cargo.

72.     As described above (*see* ¶ 52), and upon information and belief, MSC also provides a processor, wherein the processor processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, and further wherein the processor generates a message in response to the occurrence of the event or in response to the request for information regarding the shipment conveyance device.   For example, MSC's smart

containers are fitted with the Traxens devices ("processing device") which measure information related to shipping container including one or more of, but not limited to, door, humidity, temperature and shock experienced by the shipping container and therefore, MSC provides a processor which processes information regarding the shipment conveyance device. Further, MSC's smart containers, equipped with Traxens devices, detect an event including one or more of, but not limited to, deviation in temperature, theft, unauthorised use, delay, deviation in planned route, cargo impact, shock and damage and in response to the detected event, send alerts ("message") containing information about the event to the customers of MSC. These alerts are viewed in a dashboard provided by MSC using Traxens-Hub. Therefore, MSC provides a processor which generates a message in response to occurrence of an event or in response to a request for the information regarding the shipment conveyance device.

73.   As described above (*see* ¶ 53), and upon information and belief, MSC provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.  For example, MSC's Smart Containers ("shipment conveyance device"), fitted with the Traxens devices, send information ("message") including one or more of, but not limited to, location, shock, door status, temperature and humidity, to MSC's customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through Traxens-Hub). Therefore, MSC provides a transmitter for transmitting a message to a

communication device associated with at least one of owner, receiver or an individual authorized to receive the message.

74.     As described above (*see* ¶ 54), and upon information and belief, Defendant provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, MSC's Smart Containers equipped with Traxens devices include at least one or more of, but not limited to, a temperature sensor, shock sensor and tamper sensor for measuring at least one or more of, but not limited to, temperature, shock and tampering experienced by the shipping container during transportation. Therefore, MSC's Smart Containers fitted with Traxens devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

75.     As described above (*see* ¶ 55), and upon information and belief, MSC also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, MSC's Smart Containers, fitted with Traxens devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to MSC's customers. Therefore, MSC provides a message which contains information regarding the temperature of a shipment and a change in shipment temperature. Further, the Traxens devices, located on the Smart Container, measure information including, but not limited to, shock, motion, tamper and vibration experienced by the shipping container and transmit alerts ("message") when a theft or unauthorized use is

detected. Therefore, the message contains information regarding an impact or force exerted on the shipment conveyance device.

76.     As described above (*see* ¶ 56), and upon information and belief, MSC further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device.  For example, MSC's Smart Containers equipped with Traxens devices store geofencing parameters allowing MSC and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, MSC's Smart Containers equipped with Traxens devices detect events related to deviation from a pre-determined transportation route.

77.     As described above (*see* ¶ 57), and upon information and belief, MSC further provides an apparatus wherein the processor detects an occurrence giving rise to an insurance claim regarding the shipment conveyance device, and further wherein the message includes insurance claim information. For example, MSC's Smart Containers equipped with Traxens devices, transmit alerts ("message") related to events including one or more of, but not limited to, theft, delay, deviation in planned route, cargo impact, shock and damage. Based on these alerts, MSC's customers file for an appropriate insurance claim to cover their losses. Upon information and belief, MSC's Smart Containers equipped with Traxens devices detect occurrences giving rise to an insurance claim regarding the shipment and transmits messages including insurance claim information.

78.     To the extent MSC continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '029 Patent, such infringement is necessarily willful and deliberate.

79.   On information and belief, MSC has a policy or practice of not reviewing the patents of others.  Further on information and belief, MSC instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, MSC has been willfully blind to the patent rights of Plaintiff.

80.   Each of MSC's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT III

### (Infringement of U.S. Patent No. 7,482,920)

81.   Plaintiff incorporates the above paragraphs by reference.

82.   MSC has been on actual notice of the '920 Patent at least as early as the date it received service of this Original Complaint.

83.   On information and belief, MSC owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

84.   Upon information and belief, MSC has directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '920 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

85.   MSC, with knowledge of the '920 Patent, also infringes at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '920 Patent by inducing others to infringe the '920 Patent.  In particular, MSC intends to induce its customers to infringe the '920 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

86.   MSC also induces others, including its customers, to infringe at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '920 Patent by providing technical support for the use of the Accused Instrumentalities.

87.     As described above (*see* ¶ 50), and upon information and belief, MSC makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a smart container, a pallet, or a piece of luggage. For example, MSC provides smart containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with Traxens devices.

88.     Upon information and belief, MSC provides a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein the memory device stores information regarding a description of a good, product, or item, being shipped or transported via or which is contained in or on the shipment conveyance device, and origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, or payment instruction information, regarding the shipment conveyance device. For example, MSC's Smart Containers are fitted with the Traxens devices which comprise sensors including one or more of, but not limited to, temperature sensor, humidity sensor, door sensor and shock sensor for measuring and transmitting information related to one or more of, but not limited to, temperature, humidity, theft, shock and impact experienced by the shipping container ("shipment conveyance device"). As a further example, MSC's Smart Containers equipped with Traxens devices store at least an identification of MSC (since it communicates position of the container and measurements from the sensors including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub), and therefore MSC provides a memory device which stores at least one or more of origination information,

sender information, and shipper information regarding the shipment conveyance device. As a further example, MSC's Smart Containers equipped with Traxens devices store at least an identification of MSC's container (since it communicates position of the container and measurements from the sensors including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub), and therefore MSC provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, MSC's Smart Containers equipped with Traxens devices store at least an identification of MSC's customer (since it communicates position of the container and measurements from the sensors present on cargo and container including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub and MSC (who may have multiple customers availing MSC's services at any given time) correlate the information to the particular customer in order to provide updates to the customer), and therefore MSC provides a memory device which stores at least one or more of origination information, sender information, shipper information, destination information and receiver information regarding the shipment conveyance device. As a further example, MSC's Smart Containers equipped with Traxens devices store at least a description of a good, product, or item, being shipped via the shipment conveyance devices, because they identify the position/location and send the measurements from sensors including, but not limited to, door sensor, humidity sensor, temperature sensor and shock sensor, of each individual shipment to the Traxens-Hub and/or the MSC's customer (who may have multiple shipments in transit at a given time). As a further example, MSC's Smart Containers equipped with Traxens devices store measurements from one or more of door sensor, humidity sensor, temperature sensor

and shock sensor, and therefore store a description of a good, product, or item, being shipped via the shipment conveyance devices. Further, MSC's Smart Containers equipped with Traxens devices store geofencing parameters allowing MSC and/or the customer to receive alerts if the shipment conveyance device deviates from the planned route. Therefore, MSC's Smart Containers equipped with Traxens devices store at least destination information regarding the shipment conveyance devices. Further, MSC's Smart Containers equipped with Traxens devices store measurements and alerts regarding shocks, temperature, humidity and other handling parameters – and therefore stores at least handling instruction information for the shipment conveyance devices. See Figures 6, 11, 12, 16 and 18-20 above. See also Figures 21-24 below, which are screenshots of webpages associated with MSC.



Figure 21[22]

[22] Source, as visited on January 13, 2021: https://www.msc.com/getattachment/abc95690-b6c4-47b9-84f7-47c23a4ab918/636911833905860651, Page 4



Figure 22[23]



Figure 23[24]



Figure 24[25]

---

[23] Source, as visited on January 15, 2020: https://www.traxens.com/technology
[24] Source, as visited on January 15, 2020: https://www.traxens.com/en/services/data-that-suits-your-needs

89. As described above (*see* ¶ 51), and upon information and belief, MSC provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, MSC's Smart Containers are fitted with the Traxens devices which comprise a global positioning device to determine a position/location of the shipping container. Further, MSC providess a mobile application "myMSC" available on iOS and Android which is used by customers to track and trace their cargo.

90. As described above (*see* ¶ 52), and upon information and belief, MSC also provides a processing device, wherein the processing device processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, wherein the processing device generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or a transportation of or involving the shipment conveyance device, a shipment or transportation temperature, or an impact or force on the shipment conveyance device.  For example, MSC's Smart Containers are fitted with the Traxens devices ("processing device") which measure information related to shipping container including one or more of, but not limited to, door, humidity, temperature and shock experienced by the shipping container and, therefore, MSC provides a processing device which processes information regarding the shipment conveyance device. Further, MSC's Smart Containers equipped with Traxens

---

[25] Source, as visited on January 15, 2020: https://www.traxens.com/en/services/data-that-suits-your-needs

devices detect an event including one or more of, but not limited to, deviation in temperature, theft, unauthorised use, delay, deviation in planned route, cargo impact, shock and damage and in response to the detected event, send alerts ("message") containing information about the event to the customers of MSC. Further, MSC utilizes Traxens-Hub to provide a dashboard where its customers track their shipments and view information and alerts ("message") regarding the shipment as well as the shipment conveyance device, and therefore, provides a message containing location of the shipment conveyance device and at least one or more of occurrence of event, status of the shipment, transportation of shipment conveyance device, shipment temperature and impact or force experienced by the shipment conveyance device.

91.     As described above (*see* ¶ 53), and upon information and belief, MSC provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, wherein the transmitter transmits the message to a communication device associated with an individual or entity, a sender of the shipment conveyance device, a receiver of the shipment conveyance device, a carrier of the shipment conveyance device, or an individual or entity authorized to receive information regarding the shipment conveyance device or information regarding a shipment or a transportation of or involving the shipment conveyance device.  For example, MSC's Smart Containers ("shipment conveyance device"), fitted with the Traxens devices, send information ("message") including one or more of, but not limited to, location, shock, door status, temperature and humidity, to MSC's customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through Traxens-Hub). Therefore, MSC provides a transmitter for transmitting a message to a communication device associated with at least one of an individual, entity, sender of

shipment conveyance device, receiver of shipment conveyance device and carrier of shipment conveyance device.

92.  As described above (*see* ¶ 54), and upon information and belief, MSC provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or the transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, MSC's Smart Containers equipped with Traxens devices include at least one or more of, but not limited to, a temperature sensor, shock sensor and tamper sensor for measuring at least one or more of, but not limited to, temperature, shock, impact, force and tampering experienced by the shipping container during transportation. Therefore, MSC provides sensors that monitor and measure the temperature, shock, impact and force experienced by the shipment conveyance device.

93.  As described above (*see* ¶ 55), and upon information and belief, MSC also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, MSC's Smart Containers, fitted with Traxens devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to MSC's customers. Therefore, MSC provides a message which contains information regarding temperature of shipment and a change in shipment temperature. Further, the Traxens devices, located on the Smart Container, measure information including, but not limited to, shock, motion, tamper and vibration experienced by the shipping container and transmit alerts ("message") when a theft or unauthorized use is

detected. Therefore, the message contains information regarding an impact or force exerted on the shipment conveyance device.

94.     As described above (*see* ¶ 56), and upon information and belief, MSC further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with the shipment or a transportation of or involving the shipment conveyance device.  For example, MSC's Smart Containers equipped with Traxens devices store geofencing parameters allowing MSC and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, MSC's Smart Containers equipped with Traxens devices detect events related to deviation from a pre-determined transportation route.

95.     Upon information and belief, MSC further provides an apparatus wherein the event is a detection of a shipment or transportation temperature which deviates from a shipment or transportation temperature requirement. For example, MSC's Smart Containers equipped with Traxens devices transmit alerts to MSC's customers when the temperature in the container is detected beyond a threshold, and therefore, detects events including, but not limited to, deviation in shipment temperature. See Figures 12 and 23 above.

96.     Upon information and belief, MSC further provides an apparatus wherein the event is a detection of an impact experienced by the shipment conveyance device, a mishandling of the shipment conveyance device, a dropping of the shipment conveyance device, and an accident involving the shipment conveyance device.  For example, MSC's Smart Containers equipped with Traxens devices detect incidents including one or more of, but not limited to, tampering of cargo, theft, unauthorised use, impact, shock and damage. Therefore, MSC's Smart Containers equipped with Traxens devices detect events including at least one of an impact, a

force, a mishandling, a dropping and an accident experienced by the shipment conveyance device. See Figures 6, 14 and 19 above.

97.  As described above (*see* ¶ 57), and upon information and belief, MSC further provides an apparatus wherein the processing device detects an occurrence giving rise to an insurance claim regarding the shipment conveyance device, and further wherein the message includes insurance claim information. For example, MSC's Smart Containers equipped with Traxens devices, transmit alerts ("message") related to events including one or more of, but not limited to, theft, delay, deviation in planned route, cargo impact, shock and damage. Based on these alerts, MSC's customers file for an appropriate insurance claim to cover their losses. Upon information and belief, MSC's Smart Containers equipped with Traxens devices detect occurrences giving rise to an insurance claim regarding the shipment and transmits messages including insurance claim information. See Figures 14 and 19 above.

98.  To the extent MSC continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '920 Patent, such infringement is necessarily willful and deliberate.

99.  On information and belief, MSC has a policy or practice of not reviewing the patents of others.  Further on information and belief, MSC instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, MSC has been willfully blind to the patent rights of Plaintiff.

100. Each of MSC's aforesaid activities has been without authority and/or license from Plaintiff.

## **COUNT IV**

### **(Infringement of U.S. Patent No. 10,796,268)**

101. Plaintiff incorporates the above paragraphs by reference.

102.   MSC has been on actual notice of the '268 Patent at least as early as the date it received service of this Original Complaint.

103.   On information and belief, MSC owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

104.   Upon information and belief, MSC has directly infringed and continue to directly infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

105.   MSC, with knowledge of the '268 Patent, also infringes at least Claims 1, 8 , 10 and 12 of the '268 Patent by inducing others to infringe the '268 Patent.  In particular, MSC intends to induce its customers to infringe the '268 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

106.   MSC also induces others, including its customers, to infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

107.   As described above (*see* ¶ 50), and upon information and belief, MSC makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage.  For example, MSC provides smart containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with Traxens devices.

108.   As described above (*see* ¶ 51), and upon information and belief, MSC provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position

or location of the shipment conveyance device.  For example, MSC's Smart Containers are fitted with Traxens devices which comprise a global positioning device to determine a position/location of the shipping container. Further, MSC provides a mobile application "myMSC" available on iOS and Android which is used by customers to track and trace their cargo.

109.    As described above (*see* ¶ 52), and upon information and belief, MSC also provides a processor, wherein the processor generates a message in response to an occurrence of an event, or in response to a request for information regarding the shipment conveyance device which is automatically received by a receiver, wherein the message contains information regarding a shipment of the shipment conveyance device.  For example, MSC's Smart Containers are fitted with the Traxens devices ("processing device") which measure information related to shipping container including one or more of, but not limited to, door, humidity, temperature and shock experienced by the shipping container and therefore, MSC provides a processor which processes information regarding the shipment conveyance device. As a further example, MSC's Smart Containers equipped with Traxens devices detect an event including one or more of, but not limited to, deviation in temperature, theft, unauthorised use, delay, deviation in planned route, cargo impact, shock and damage and in response to the detected event, send alerts ("message") containing information about the event to the customers of MSC. These alerts are viewed in a dashboard provided by MSC using Traxens-Hub. Therefore, MSC provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, MSC's Smart Containers, fitted with Traxens devices, measure information using sensors including

one or more of, but not limited to, door sensor, humidity sensor, temperature sensor and shock sensor, and transmit information in the form of alerts to MSC's customers after a request for information is received by MSC automatically. Therefore, MSC provides a receiver which receives a request for information automatically.

110.   As described above (*see* ¶ 53), and upon information and belief, MSC provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. For example, MSC's Smart Containers ("shipment conveyance device"), fitted with the Traxens devices, send information ("message") including one or more of, but not limited to, location, shock, door status, temperature and humidity, to MSC's customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through Traxens-Hub). Therefore, MSC provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

111.   As described above (*see* ¶ 54), and upon information and belief, MSC provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, MSC's Smart Containers equipped with Traxens devices include at least one or more of, but not limited to, a temperature sensor, shock sensor and tamper sensor for measuring at least one or more of, but not limited to, temperature, shock and tampering experienced by the shipping container during transportation. Therefore,

MSC's Smart Containers fitted with Traxens devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

112.   As described above (*see* ¶ 55), and upon information and belief, MSC also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, MSC's Smart Containers, fitted with Traxens devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to MSC's customers. Therefore, MSC provides a message which contains information regarding temperature of shipment and a change in shipment temperature. Further, the Traxens devices, located on the Smart Container, measure information including, but not limited to, shock, motion, tamper and vibration experienced by the shipping container and transmit alerts ("message") when a theft or unauthorized use is detected. Therefore, the message contains information regarding an impact or force exerted on the shipment conveyance device.

113.   As described above (*see* ¶ 56), and upon information and belief, MSC further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device. For example, MSC's Smart Containers equipped with Traxens devices store geofencing parameters allowing MSC and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, MSC's Smart Containers equipped with Traxens devices detect events related to deviation from a pre-determined transportation route.

114.   To the extent MSC continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '268 Patent, such infringement is necessarily willful and deliberate.

115.   On information and belief, MSC has a policy or practice of not reviewing the patents of others.  Further on information and belief, MSC instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, MSC has been willfully blind to the patent rights of Plaintiff.

116.   Each of MSC's aforesaid activities has been without authority and/or license from Plaintiff.

## **COUNT V**

### **(Infringement of U.S. Patent No. 7,253,731)**

117.   Plaintiff incorporates the above paragraphs by reference.

118.   MSC has been on actual notice of the '731 Patent at least as early as the date it received service of this Original Complaint.

119.   On information and belief, MSC owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

120.   Upon information and belief, MSC has directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '731 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

121.   MSC, with knowledge of the '731 Patent, also infringes at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '731 Patent by inducing others to infringe the '731 Patent.  In particular, MSC intends to induce its customers to infringe the '731 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

122.   MSC also induces others, including its customers, to infringe at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

123.   As described above (*see* ¶ 50), and upon information and belief, MSC makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is associated with a shipment, and further wherein the shipment conveyance device is at least one of a shipping container, a pallet, and a tote.  For example, MSC provides smart containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with Traxens devices.

124.   As described above (*see* ¶ 85), and upon information and belief, MSC provides a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein information regarding the shipment is stored in the memory device, and further wherein the information regarding the shipment includes a description of a good, product, or item, being shipped or transported via the shipment conveyance device, and at least one of origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, and payment instruction information, regarding the shipment. For example, MSC's smart containers are fitted with the Traxens devices (including a memory device) which comprise sensors, including but not limited to, temperature sensor, humidity sensor, door sensor and shock sensor. Further, MSC's smart container, equipped with Traxens devices, stores at least an identification of MSC (since it communicates position of the container and measurements

from the sensors including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub), and therefore stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. Further, MSC's smart container, equipped with Traxens devices, stores at least an identification of MSC's container (since it communicates position of the container and measurements from the sensors including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub), and therefore stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. Further, MSC's smart container, equipped with Traxens devices, stores at least an identification of MSC's customer (since it communicates position of the container and measurements from the sensors present on cargo and container including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub and MSC (who may have multiple customers availing MSC's services at any given time) correlates the information to the particular customer in order to provide updates to the customer), and therefore stores at least one or more of origination information, sender information, shipper information, destination information and receiver information regarding the shipment conveyance device. Further, MSC's smart container, equipped with Traxens devices, stores at least a description of a good, product, or item, being shipped via the shipment conveyance device, because it identifies the position/location and sends the measurements from sensors including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor, of each individual shipment to the Traxens-Hub and/or the MSC's customer (who may have multiple shipments in transit at a given time). Further, MSC's smart container, equipped with Traxens devices, stores measurements from one or

more of door sensor, humidity sensor, temperature sensor and shock sensor, and therefore stores a description of a good, product, or item, being shipped via the shipment conveyance device. Further, MSC's smart container, equipped with Traxens devices, stores geofencing parameters allowing MSC and/or the customer to receive alerts if the shipment deviates from the planned route. Therefore, MSC's smart container, equipped with Traxens devices, stores at least destination information regarding the shipment conveyance device. Further, MSC's smart container, equipped with Traxens devices, stores measurements and alerts regarding shock, temperature, humidity and other handling parameters – and therefore stores at least handling instruction information for the shipment conveyance device.

125.  As described above (*see* ¶ 51), and upon information and belief, MSC provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, MSC's Smart Containers are fitted with Traxens devices which comprise a global positioning device to determine a position/location of the shipping container. Further, MSC provides a mobile application "myMSC" available on iOS and Android which is used by customers to track and trace their cargo.

126.  As described above (*see* ¶¶ 52, 54 and 55), and upon information and belief, MSC also provides a processing device, wherein the processing device processes at least one of information regarding the shipment and information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment or the shipment conveyance device, wherein the processing device generates a message containing information regarding the position or location of the

shipment or the shipment conveyance device and information regarding at least one of the occurrence of an event, a status of the shipment, a shipment temperature, and an impact or force on the shipment conveyance device.  For example, MSC's Smart Containers are fitted with the Traxens devices ("processing device") which measure information related to shipping container including one or more of, but not limited to, door, humidity, temperature and shock experienced by the shipping container and therefore, MSC provides a processor which processes information regarding the shipment conveyance device. As a further example, MSC's Smart Containers equipped with Traxens devices detect an event including one or more of, but not limited to, deviation in temperature, theft, unauthorised use, delay, deviation in planned route, cargo impact, shock and damage and in response to the detected event, send alerts ("message") containing information about the event to the customers of MSC. These alerts are viewed in a dashboard provided by MSC using Traxens-Hub. Therefore, MSC provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, MSC's Smart Containers equipped with Traxens devices include at least one or more of, but not limited to, a temperature sensor, shock sensor and tamper sensor for measuring at least one or more of, but not limited to, temperature, shock and tampering experienced by the shipping container during transportation. Therefore, MSC's Smart Containers fitted with Traxens devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device. As a further example, MSC provides a message which contains information regarding temperature of shipment and a change in shipment temperature. Further, the Traxens devices, located on the

Smart Container, measure information including, but not limited to, shock, motion, tamper and vibration experienced by the shipping container and transmit alerts ("message") when a theft or unauthorized use is detected. Therefore, the message contains information regarding an impact or force exerted on the shipment conveyance device.

127.  As described above (*see* ¶ 53), and upon information and belief, MSC provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with at least one of an individual or entity, a sender of the shipment, a receiver of the shipment, a carrier of the shipment, and an individual or entity authorized to receive information regarding the shipment or the shipment conveyance device.  For example, MSC's Smart Containers ("shipment conveyance device"), fitted with the Traxens devices, send information ("message") including one or more of, but not limited to, location, shock, door status, temperature and humidity, to MSC's customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through Traxens-Hub). Therefore, MSC provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

128.  As described above (*see* ¶ 54), and upon information and belief, MSC provides a sensor, wherein the sensor monitors or measures at least one of a temperature during shipment, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, and a force exerted on the shipment conveyance device.  For example, MSC's Smart Containers equipped with Traxens devices include at least one or more of, but not limited to, a temperature sensor, shock sensor and tamper sensor for measuring at least

one or more of, but not limited to, temperature, shock and tampering experienced by the shipping container during transportation. Therefore, MSC's Smart Containers fitted with Traxens devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

129.    As described above (*see* ¶ 55), and upon information and belief, MSC also provides a message which contains information regarding at least one of a temperature of the shipment, a change in a shipment temperature, and an impact or force exerted on the shipment conveyance device.  For example, MSC's Smart Containers, fitted with Traxens devices, detect if the temperature in the container is beyond a threshold and as a result, transmit alerts ("message") to MSC's customers. Therefore, MSC provides a message which contains information regarding temperature of shipment and a change in shipment temperature. Further, the Traxens devices, located on the Smart Container, measure information including, but not limited to, shock, motion, tamper and vibration experienced by the shipping container and transmit alerts ("message") when a theft or unauthorized use is detected. Therefore, the message contains information regarding an impact or force exerted on the shipment conveyance device.

130.    As described above (*see* ¶ 56), and upon information and belief, MSC further provides an apparatus wherein the event is a detection of a deviation from a pre-determined transportation route associated with the shipment.  For example, MSC's Smart Containers equipped with Traxens devices store geofencing parameters allowing MSC and/or the customer to receive alerts if the shipping container deviates from the planned route.

Therefore, MSC's Smart Containers equipped with Traxens devices detect events related to deviation from a pre-determined transportation route.

131.  As described above (*see* ¶ 92), and upon information and belief, MSC further provides an apparatus wherein the event is a detection of a shipment temperature which deviates from a shipment temperature requirement. For example, MSC's smart containers, equipped with Traxens devices, transmit alerts related to temperature deviations inside a container to MSC's customers, and therefore, detect events including, but not limited to, deviation in shipment temperature.

132.  As described above (*see* ¶ 93), and upon information and belief, MSC further provides an apparatus wherein the event is a detection of at least one of an impact experienced by the shipment conveyance device, a force experienced the shipment conveyance device, a mishandling of the shipment conveyance device, a dropping of the shipment conveyance device, and an accident involving the shipment conveyance device.  For example, MSC's smart container, equipped with Traxens device, detects an event including tampering of cargo, deviation in temperature, load-loss, theft, delay, and deviation in planned route, cargo impact, shock and damage experienced by the shipping container. Therefore, MSC's smart container, equipped with Traxens devices, detects events including an impact, a force, a mishandling, a dropping and an accident experienced by the shipment conveyance device.

133.  As described above (*see* ¶ 57), and upon information and belief, MSC further provides an apparatus wherein the processing device detects an occurrence giving rise to an insurance claim regarding the shipment, and further wherein the message includes insurance claim information. For example, MSC's smart container, equipped with Traxens devices, transmits alerts ("message") related to events including one or more of, but not limited to, theft, delay,

deviation in planned route, cargo impact, shock and damage. Based on these alerts, MSC's customers file for an appropriate insurance claim to cover their losses. Upon information and belief, MSC's smart container, equipped with Traxens devices, detects occurrences giving rise to an insurance claim regarding the shipment and transmits messages including insurance claim information.

134.    To the extent MSC continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '731 Patent, such infringement is necessarily willful and deliberate.

135.    On information and belief, MSC has a policy or practice of not reviewing the patents of others.  Further on information and belief, MSC instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, MSC has been willfully blind to the patent rights of Plaintiff.

136.    Each of MSC's aforesaid activities has been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Transcend respectfully requests the Court enter judgment against MSC:

1.    Declaring that MSC has infringed each of the Transcend Patents;

2.    Declaring that MSC's infringement of each of the Transcend Patents has been willful and deliberate;

3.    Awarding Transcend compensatory damages as a result of MSC's infringement of the Transcend Patents;

4.    Awarding Transcend treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of MSC's willful and deliberate infringement of the Transcend Patents;

5.      Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining MSC from further acts of infringement with respect to the Transcend Patents;

6.      Awarding Transcend its costs, attorneys' fees, expenses, and interest;

7.      Awarding Transcend ongoing post-trial royalties; and

8.      Granting Transcend such further relief as the Court finds appropriate.


## JURY DEMAND

Transcend demands trial by jury, under Fed. R. Civ. P. 38.


Dated:  January 15, 2021                    Respectfully Submitted
                                            */s/ René A. Vazquez*
                                            René A. Vazquez
                                            Virginia Bar No. 41988
                                            rvazquez@ghiplaw.com
                                            Randall T. Garteiser
                                            Texas Bar No. 24038912
                                            rgarteiser@ghiplaw.com
                                            Thomas Fasone III
                                            Texas Bar No. 00785382
                                            tfasone@ghiplaw.com
                                            M. Scott Fuller
                                            Texas Bar No. 24036607
                                            sfuller@ghiplaw.com

                                            **GARTEISER HONEA, PLLC**
                                            119 W. Ferguson Street
                                            Tyler, Texas 75702
                                            Telephone: (903) 705-7420
                                            Facsimile: (903) 405-3999

                                            **ATTORNEYS FOR
                                            TRANSCEND LLC**